IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ORLANDO MOROZOV[1]                    *

                Plaintiff              *

        vs.                            *
                                          CIVIL ACTION NO. MJG-10-1515
HOWARD COUNTY, MD, et al.              *

                Defendants             *

*       *       *       *       *       *       *       *       *

## MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT

The Court has before it Defendant Howard County Police
Officer Jennifer Sarver's Motion for Summary Judgment [Document
55] and the materials submitted relating thereto.  The Court
finds a hearing unnecessary.


I.    BACKGROUND[2]

In the early morning hours of April 15, 2008, Carlton Ruben
Lucas ("Lucas"), a tow truck driver employed by L&K Recovery, a
repossession company, arrived at the home of Plaintiff Orlando
Morozov[3] (the "Plaintiff" or "Morozov") and attempted to
repossess a Honda Accord owned by Plaintiff as permitted by

---

[1]    Plaintiff's name is spelled in the pleadings as "Morozov"
as well as "Morosov".
[2]    The facts are predominately extracted from Plaintiff's
deposition testimony and Officer Sarver's Statement of Probable
Cause.
[3]    At the time of these events, the Plaintiff went by the name
Orlando Wright.  The Plaintiff has subsequently changed his last
name to Morozov.

state law.[4]

Upon arrival at Morozov's home, Lucas rang the doorbell and Morozov answered. Lucas said he was there to take the Honda and that he (Lucas) "had called the police and the police knew he was taking the car." Pl.'s Dep.[5] at 8:5-20. In response to this information, Morozov said nothing, got into the Honda, which was parked in his driveway, and then backed the Honda out of the driveway onto the street. Id. at 9:1-10. In the meantime, Lucas got into his tow truck and, as Morozov began to drive up the street, Lucas tried to hit or block him with the tow truck, forcing Morozov to go "over on my neighbor's yard" to avoid a collision. Id. at 11:13-18, 12:11-21. In order to evade repossession of his vehicle, Morozov proceeded to park the Honda about a block from his home and then headed back to his house on foot. Id. at 13-14.

While Morozov was moving the Honda, Defendant Officer Jennifer Sarver ("Officer Sarver") – in response to a telephone

---

[4] The Maryland Commercial Code provides the right of repossession for secured creditors. Section 9-609 states that "[a]fter default, a secured party . . . [m]ay take possession of the collateral" pursuant to judicial process or "[w]ithout judicial process, if it proceeds without breach of the peace." Md. Code Ann., Com. Law § 9-609.

[5] Plaintiff's entire deposition testimony is attached to both Officer Sarver's summary judgment motion [Document 55], at Ex. 2 and Plaintiff's opposition [Document 56], at Ex. 1.

call from Lucas[6] – arrived at Plaintiff's home and met Lucas.
Morozov was not yet back. Lucas told Officer Sarver that
Morozov tried to "back over" him when he attempted to repossess
the vehicle. [Document 155] at Ex. 3 (Statement of Probable
Cause). Lucas then left before Morozov returned. After Morozov
returned, he met Officer Sarver and, at some point, two male
Howard County officers joined her at Morozov's home.[7] Pl.'s Dep.
at 35-38.

One of the male officers told Morozov that Lucas had
complained Morozov tried to hit him with his car. Morozov
responded that Lucas had actually tried to hit him. Id. at
63:7-13, 73. Officer Sarver asked Morozov for identification
and he produced his passport. Id. at 41. One of the male
officers told Morozov he needed to see a driver's license. When
Morozov responded that he did not have it with him[8]; the male
officer became "very nasty". See id. at 42-44.

One of the male officers asked Morozov where the Honda was
and, in light of the officer's prior "attitude", Morozov did not

---

[6]     The evidence does not directly refute the defense position
that the telephone call was made by Lucas after the alleged
assault interaction.
[7]     The two male officers are not defendants and have not been
identified by name.
[8]     Morozov testified that his license, along with his wallet,
was in the Honda, but he does not recall if he told that to the
officers. Pl.'s Dep. at 44.

answer.  Id. at 48.  The male officer continued to ask the
location of the Honda and stated that he would arrest Morozov if
he did not tell him; Morozov remained unresponsive.  Id. at 48-
49.  The male officer then placed Morozov in handcuffs, the
other male officer searched him, and one of them (hereinafter
referred to as "the Driver") placed Morozov in the back of a
patrol car.[9]  Id. at 49-50.  The Driver proceeded to drive
Morozov around his neighborhood in the patrol car in search of
the Honda.[10]  At some point, the Driver saw a car fitting the
description of the Honda.  Morozov confirmed that it was his car
and handed the Driver his keys.  Id. at 52-55.  At Morozov's
request, the Driver got his wallet and tax papers out of the
Honda.  Id. at 55.  The Driver took Morozov to central booking
for processing.  Morozov was released on bail several hours
later.  Morozov, upon returning home, learned that someone,
presumably the Driver, had returned his wallet, tax papers, and
car keys to his wife while he was being processed.[11]  After his

---

[9]    Despite his deposition testimony that one of the male
officers placed him in handcuffs and in the police car, Morozov
contends that Officer Sarver was the arresting officer and
somehow responsible for any actions of the unidentified male
officers.  There is, however, no evidence adequate to support
this contention.
[10]    It is unclear how long the male officer and Morozov drove
around looking for the Honda, but Morozov described the time as
not long.  Pl.'s Dep. at 53:1-3.
[11]    On his return home, Morozov discovered that his wife had

4

release, Morozov did not return to the place at which he had parked the Honda.

Morozov never saw Lucas after the April 15 incident. A week or two after his arrest, Morozov received a letter from Honda stating that his vehicle had been repossessed and disclosing its storage location.[12] There is no evidence establishing when and by whom the Honda was repossessed. Eventually, Morozov went to the private tow yard where the Honda was stored, paid the pertinent costs, and secured its release.

Plaintiff was charged with the first and second-degree assault of Lucas. On May 25, 2008, the first-degree assault charge was <u>nolle prosequied</u> and on August 19, 2008, the second-degree assault charge was <u>nolle prosequied</u>.

II.  <u>PROCEDURAL FRAMEWORK</u>

Morozov filed the initial Complaint in this matter on June 9, 2010 [Document 1] and the Amended Complaint [Document 2] the following day presenting claims against Howard County, Maryland, Lucas, Officer Sarver, and "Doe" defendants. The Court granted Howard County's dismissal motion, dismissing all claims against

_____

the items in her possession at their home and she told him the police had brought the items to her. <u>Id.</u> at 56-59, 79, 83.
[12]  In his deposition, Morozov stated that he did not have the letter from Honda anymore and could not recall what date it indicated Honda had repossessed the car. <u>Id.</u> at 80.

it [Document 13].  On December 13, 2011, Plaintiff filed the
Second Amended Complaint [Document 24] against Officer Sarver,
Lucas, and L&K Recovery alleging claims in the following counts:

> Count I:      Malicious Prosecution against
> Lucas and L&K Recovery
>
> Count II:     Abuse of Process against
> Lucas and L&K Recovery
>
> Count III:    Violation of 42 U.S.C. § 1983
> against Officer Sarver
>
> Count IV      Violations of 42 U.S.C. §
> 1983-Conspiracy against
> Officer Sarver

On June 5, 2012, the Court dismissed all claims against
Officer Sarver in Count IV [Document 36].  On July 19, 2012, the
Court approved Morozov's voluntary dismissal with prejudice of
all claims against Lucas and L&K Recovery [Document 41].

There remain pending only the claims in Count III against
Officer Sarver.  By the instant motion, she seeks summary
judgment thereon.


III.  <u>SUMMARY JUDGMENT STANDARD</u>

A motion for summary judgment shall be granted if the
pleadings and supporting documents show that there is "no
genuine dispute as to any material fact and that the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement:  The Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically.  After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).  Thus, in order to defeat a motion for summary judgment, "the party opposing the motion must present evidence of specific facts from which the finder of fact could reasonably find for him or her."  Mackey v. Shalala, 43 F. Supp. 2d 559, 564 (D. Md. 1999) (emphasis added).

When evaluating a motion for summary judgment, the Court must bear in mind that the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Celotex, 477 U.S. at 327 (quoting Rule 1 of the Federal Rules of Civil Procedure).

IV.  DISCUSSION

Plaintiff asserts that Officer Sarver violated his Fourth and Fourteenth Amendment rights by unlawfully facilitating the private repossession of his Honda[13] thereby rendering the possession a state action.

    A.    State Action

        1. Legal Principles

Under the Fourth Amendment, "[a] 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'"  Soldal v. Cook Cnty., 506 U.S. 56, 61 (1992) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)).  To prevail on a Fourteenth Amendment substantive due process claim, plaintiffs must demonstrate "1) that they had property or a property interest; (2) that the state deprived them of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency."  Sylvia Dev. Corp. v. Calvert Cnty., 48 F.3d 810, 827 (4th Cir. 1995) (emphasis in original).  To establish a claim for a violation of procedural

_____

[13]    Morozov is not, or no longer, claiming Officer Sarver (or presumably the male officer who in fact arrested him) lacked probable cause to arrest him.

8

due process plaintiffs must show that "(1) they had property or a property interest (2) of which [the state] deprived them (3) without due process of law." Id. at 826.

It is well settled that the safeguards of the Fourth and Fourteenth Amendments shield citizens only from conduct that "may fairly be characterized as 'state action.'" Lugar v. Edmondson Oil Co., 457 U.S. 922, 924, 929 (1982) (explaining the § 1983 "under color of state law" and the "state action" requirements are identical). Hence, a purely private repossession of a vehicle or other property – no matter how wrongful – generally cannot be challenged as state action under the Fourth or Fourteenth Amendment, even if the repossessor is enforcing state law rights.[14] See generally Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 620 (1991) (explaining conduct of private parties is beyond the scope of Constitutional protection in most instances). The Supreme Court has stated that private action can be attributed to the state if the state provides significant encouragement, either overt or

_____

[14] However, there could be a situation where a state's statutory scheme for self-help repossession is such that it arguably renders the repossessor a state actor. Cf. Flagg Bros., Inc. v. Brooks, 436 U.S. 149 (1978) (holding private actor's sale of goods pursuant to self-help provision of state law was not state action).

covert, or when a private actor operates as a "willful participant in the joint activity with the State or its agents." See Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 296 (2001) (quoting Lugar, 457 U.S. at 941).

Hence, the state action doctrine recognizes that there is a point when private action can fairly be labeled action of the state and hence restricted by the Fourth and Fourteenth Amendment. See id.; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 52 (1999). The Fourth Circuit has acknowledged, "'there is no specific formula for determining whether state action is present'" and what "'is fairly attributable [to the State] is a matter of normative judgment, and the criteria lack rigid simplicity.'" Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 182 (4th Cir. 2009) (quoting Holly v. Scott, 434 F.3d 287, 292 (4th Cir. 2006)).

Although the United States Court of Appeals for the Fourth Circuit has not had the occasion to examine the state action issue in the context of police involvement with a private repossession, several other circuits have. "These circuits are in agreement as to the law: officers are not state actors during a private repossession if they act only to keep the peace, but they cross the line if they affirmatively intervene to aid the repossessor." Marcus v. McCollum, 394 F.3d 813, 818 (10th Cir.

2004).  That is, the mere stand-by presence of police at the scene of a private repossession to observe and keep the peace, by itself, does not equate to state action.  See id. at 824; Hensley v. Gassman, 693 F.3d 681, 689 (6th Cir. 2012) cert. denied, 12-717, 2013 WL 1500237 (U.S. Apr. 15, 2013); Barrett v. Harwood, 189 F.3d 297, 302 (2d Cir. 1999); Abbott v. Latshaw, 164 F.3d 141, 147 (3d Cir. 1998); Soldal v. Cnty. of Cook, 942 F.2d 1073, 1075 (7th Cir. 1991) (en banc) rev'd on other grounds. Soldal v. Cook Cnty., III., 506 U.S. 56 (1992).

The point at which police involvement in a private repossession takes on the character of state action does not appear reducible to a precise formula.  The Third Circuit describes the relevant inquiry as "whether an officer affirmatively aided a repossession" by playing a "principal role in the seizure" so that "the repossession would not have occurred but for his assistance."  See Harvey v. Plains Twp. Police Dep't, 635 F.3d 606, 610 (3d Cir. 2011) (quoting Marcus, 394 F.3d at 819).  Similarly, the Tenth Circuit examines the totality of the circumstances to determine whether "the officer affirmatively intervene[d] to aid the repossessor enough that the repossession would not have occurred without the officer's help."  Moore v. Carpenter, 404 F.3d 1043, 1046 (8th Cir. 2005).  In Barrett v. Harwood, the Second Circuit, after surveying case

law and the "spectrum of police involvement" addressed therein, defined the "crucial question" as

> [W]hether the police officer was (1) present simply to stand by in case there was a breach of the peace, or (2) taking an active role that either affirmatively assisted in the repossession over the debtor's objection or intentionally intimidated the debtor so as to prevent him from exercising his legal right to object to the repossession.

189 F.3d 297, 302-03 (2d Cir. 1999). Other Circuits, though employing perhaps slightly different wording, describe the critical inquiry in substantially the same manner. See, e.g., United States v. Coleman, 628 F.2d 961, 964 & n.1 (6th Cir. 1980) (stating that police compulsion, encouragement, direction, assistance, or affirmative participation could constitute state action).

While the precise mode of expression differs from circuit to circuit, the consensus is that the determination of whether a police officer's role in a private repossession renders the repossession state action must be evaluated through an investigation of the totality of the "particular facts and circumstances of the case." Harvey, 635 F.3d at 610; see also Marcus, 394 F.3d at 819; Barrett, 189 F.3d at 302-03. The ultimate determination of whether the action of a private entity is considered action of the state is a question of law to be

resolved by the court.  Goldstein v. Chestnut Ridge Volunteer
Fire Co., 218 F.3d 337, 344 n.7 (4th Cir. 2000) (unpublished);
Blum v. Yaretsky, 457 U.S. 991, 997, 102 (1982).  However,
factual disputes may exist that underlie the ultimate
determination of state action.  See Goldstein, 218 F.3d at 344
n.7; Haavistola v. Cmty. Fire Co., 6 F.3d 211, 218 (4th Cir.
1993) (explaining determination of whether private entity is
performing an exclusive and traditional public function "is a
factually intense analysis").


        2.    The Evidence

    Morozov relies on his deposition testimony and Officer
Sarver's Statement of Probable Cause to establish that Officer
Sarver's actions crossed the line from neutral peacekeeper into
active facilitator thereby rendering the repossession of his
vehicle a state action.

    It is true that Officer Sarver and the two male officers
did more than provide their passive presence at Morozov's house.
See United States v. Coleman, 628 F.2d 961, 963-64 (6th Cir.
1980) (finding no state action where, at request of repossessor,
police parked around corner from scene of repossession for
standby purposes).  However, the evidence is by no means

sufficient to support a finding that the repossession took on

the character of state action or to generate a material dispute

of fact as to that issue.

Officer Sarver (and the other officers) did not arrive by

virtue of a request to assist in the repossession; were not even

present when Lucas attempted to repossess the Honda[15]; did not

take action to aid the repossession[16]; did not make any

affirmative statements to Morozov relating to the legality of

the seizure; and did not tell Morozov to stand down and permit

the seizure to occur.[17]

Only after Lucas left in his tow truck did Morozov return.

It was then that one of the male officers threatened to arrest

---

[15]   Cf. Booker v. City of Atlanta, 776 F.2d 272, 274 (11th Cir.
1985) (holding summary judgment improper on state action issue
where even though officer did not actively assist with
repossession jury could find that officer's "arrival with the
repossessor gave the repossession a cachet of legality and had
the effect of intimidating Booker into not exercising his right
to resist, thus facilitating the repossession").
[16]   Cf. Abbott v. Latshaw, 164 F.3d 141, 147 (3d Cir. 1998)
(concluding a reasonable jury could find that police officers
joined forces with the repossessor thereby creating state action
where officers advised repossessor he had a right to immediate
possession of vehicle and threatened to arrest plaintiff if he
did not move his car to make way for the repossessor).
[17]   Cf. Harris v. City of Roseburg, 664 F.2d 1121, 1127 (9th
Cir. 1981) (holding sufficient evidence of state action where
police officer told debtor to stop interfering with repossession
or he would go to jail and debtor testified he would have
physically resisted the repossession had the police not been
there).

Morozov if he did not tell him the location of the Honda.

Threatening to arrest Morozov in this instance – after the

repossessor left – would not suffice retroactively to transform

an unsuccessful repossession effort into state action.[18]

Moreover, even assuming that the male officer's forcing Morozov

to reveal the location of the Honda would constitute

impermissible state action, Morozov would not prevail.  First,

there is no evidence adequate to prove that the police in fact

notified Lucas of the location of the Honda and facilitated the

repossession, whenever it took place.  Indeed, the proximity of

the Honda to Morozov's house renders it quite plausible that a

repossessor – with knowledge of the vehicle's description and

license plate number – would be able to find the car.  Thus, it

cannot be found that "the repossession would not have occurred

without the officer's help."  Moore v. Carpenter, 404 F.3d 1043,

1046 (8th Cir. 2005). Second, the male officer in question is

not a defendant and the evidence does not establish a basis to

hold Officer Sarver responsible for his actions.

    Plaintiff contends that merely by arresting him and keeping

--------

[18]    See Menchaca v. Chrysler Creditor Corp, 613 F.2d 507, 510-
13 (5th Cir. 1980) (finding no state action where police arrived
at repossession scene after report of loud and abusive language,
informed vehicle owner that repossession was a civil matter, the
police were there to quiet the disturbance, and that the owner
could be arrested if he continued to create a breach of the
peace, and then left before the repossession concluded)

him for several hours, the police left him incapable of

protesting any continued repossession efforts by Lucas and/or

L&K Recovery.  However, in the absence of evidence establishing

when the repossession took place, it is not possible to find

that keeping Morozov in custody caused his absence at a critical

time.

Plaintiff seeks to rely on the Seventh Circuit's decision

in Soldal v. Cnty of Cook, 942 F.2d 1073 (7th Cir. 1991), to

show state action on the present facts.  Plaintiff's reliance is

misplaced.  In Soldal, the Seventh Circuit found sufficient

evidence of state action where a deputy sheriff and other

officers accompanied a landlord to evict a trailer from a rented

trailer park lot.  Upon arrival of the officers and the

landlord, together, the deputy told the tenant "he was there to

prevent him from interfering with the eviction", and the

officers stayed at the scene through the entirety of the

eviction.  942 F.3d at 1074-75.  In affirming the district

court's finding of state action, the Seventh Circuit explained

that the:

> [C]ondition of the record . . . requires us,
> as the panel opinion explained, to assume
> that there was a conspiracy between the
> private and the public defendants – that the
> deputy sheriffs joined [the landlord] in a
> scheme to get rid of a pesky tenant . . .
> [so that] it is as if the deputy sheriffs

> themselves seized the trailer . . . and
> towed it away.

See id. at 1075.  Here, Officer Sarver did not show up to
Morozov's home with Lucas, did not make any affirmative
statement to Morozov relating to preventing interference with a
repossession (which at that point had ceased), and did not even
witness the attempted or ultimate repossession of the Honda.
There is neither an allegation that Officer Sarver conspired
with Lucas nor any evidence that would support such a
proposition.  See Longmoor v. Nilsen, 312 F. Supp. 2d 352, 360
(D. Conn. 2004) (finding no state action on summary judgment
record where even accepting as true that police told plaintiff
her car would be towed whether she surrendered her keys or not,
there was no evidence repossessor and police were working
together and "any actual inducement achieved by the officers can
be ascribed to their own initiative" of keeping the peace).
Soldal provides no support for Plaintiff's state action
contention.

As discussed herein, Morozov has not produced evidence
capable of supporting a finding that Officer Sarver's actions
rendered the repossession of his Honda a state action or,
indeed, that she did anything wrong.  Therefore, Officer Sarver
is entitled to summary judgment with regard to all claims in

17

Count III


B.  <u>Qualified Immunity</u>

Because the Court has found Officer Sarver entitled to
summary judgment, <u>a</u> <u>fortiori</u> the Court finds that it would not
"be clear to a reasonable officer that [her] conduct was
unlawful in the situation [she] confronted."  <u>Saucier v. Katz</u>,
533 U.S. 194, 202 (2001).  Hence, she would be entitled to
qualified immunity if the issue were not moot.


V.   <u>CONCLUSION</u>

For the foregoing reasons:

     1.   Defendant Howard County Police Officer Jennifer
          Sarver's Motion for Summary Judgment [Document
          55] is GRANTED.

     2.   Judgment shall be entered by separate Order.


SO ORDERED, this <u>Tuesday, May 28, 2013</u>.


                         _____/s/_____
                            Marvin J. Garbis
                         United States District Judge